UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Lori McDermott,** *et al.*,

                Case No. C2-CV-04-721
                JUDGE GREGORY L. FROST
    **Plaintiffs,**         MAGISTRATE JUDGE KEMP

  v.

**J. Kenneth Blackwell, Ohio Secretary of State and Office of the Ohio
Secretary of State,**

    **Defendants.**

## OPINION & ORDER

Presently before the Court is a motion for summary judgment filed by Defendants J. Kenneth Blackwell, Ohio Secretary of State ("Blackwell"), and the Office of the Ohio Secretary of State ("Office") (collectively "Defendants"). (Doc. # 5). Plaintiffs include Lori McDermott ("McDermott"), Maria Brebnor ("Brebnor"), Marla Reichenbach ("Reichenbach"), Paula Dill ("Dill"), Crystal Ginn ("Ginn"), Sandra Western ("Western"), and Virginia Green ("Green"). (Doc. # 1). Plaintiffs allege that Defendants terminated their employment in retaliation for exercising their rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. *Id*. Because the matter is fully briefed the Court turns to an examination of the issues the motion presents. (Docs. # # 9, 13).

## BACKGROUND

Each Plaintiff is an Ohio resident who worked in the Ohio Secretary of State's office as a Customer Service Assistant 2 in the Business Service Division. (Doc. # 1 at 1 & ¶ ¶ 3-9). Every Plaintiff is a member of the Communications Workers of America, Local 4501 ("CWA"). *Id.*

1

The CWA is exclusive representative for the relevant bargaining unit of the Office. *Id.* The Office is a party to the Collective Bargaining Agreement ("Agreement") with the CWA. *Id.* at ¶ 10; Doc. # 5 Ex. A.

### A. BUSINESS ASSESSMENT

The Office had a consultant perform an independent assessment of the business service division in 2003. (Doc. # 5 Exs. B & C). The purpose of the study was to precisely determine the "expenses involved in the customer service portion of the Business Service Division and the alternatives that might be available to provide an appropriate level of customer services while decreasing costs." (Doc. # 5 at 1).

The consultant examined three possibilities: maintaining the current method; implementing new technologies; and outsourcing. (Doc. # 5 Ex. C). Ultimately, the consultant concluded that the best option was outsourcing because the Office could save 40 % of its budget for the customer service area and maintain a satisfactory level of customer service by implementing that method. (Doc. # 5 Ex. C at 1, 8).

The Office agreed with the consultant's recommendation. Only the employees in the Business Service Division's call center were affected by the Office's decision to outsource. *Id.* at Exs. B, C, D. On February 20, 2004, the Office informed the CWA of the potential outsourcing pursuant to the Agreement. *Id.* at Ex. E. The Office and the CWA met several times between March 11, 2004 and mid-June 2004 to try and reach an agreement on an alternative to outsourcing. *Id.* at Exs. B, E, F, G, H. Alas, each meeting was unsuccessful and on June 25, 2004, the Office sent the Plaintiffs notice that the Office was laying them off effective August 6, 2004. *Id.* at Ex. I. The Notice comported with the Agreement. *Id.* at Exs. A, I.

A total of fifteen (15) CSA-2s in the call center were laid off in accordance with the Agreement's seniority provision. (Doc. # 5 Ex. B ¶ 7). Every Plaintiff executed a waiver of appeal and accepted a severance package. (Doc. # 5 Ex. I # # 1-7; *but see* Doc. # 11). Several Office employees were on leave pursuant to the FMLA as of August 6, 2004. (Doc. # 5 Ex. B at ¶ ¶ 6, 7). Of the fifteen (15) individuals who were laid off, eight (8) were on leave pursuant to the FMLA on August 6, 2004. *Id.* However, none of the seven (7) Plaintiffs were on leave on that date. *Id.* at ¶ ¶ 6-8.

### B. PLAINTIFFS' LEAVE

#### 1. McDermott

McDermott had previously used FMLA leave for her own serious health condition, migraine headaches. (Doc. # 5 Ex. B ¶ 8(a)); Doc. # 11 McDermott Aff). McDermott's leave was pursuant to 29 U.S.C. § 2612(a)(1)(D), the FMLA's self-care provision. The last time McDermott used FMLA leave before the lay off was July 29, 2003. (Doc. # 5 Ex. B ¶ 8(a)).

#### 2. Brebnor

Brebnor used FMLA leave to care for her asthmatic son and her father who had cancer. *Id.* at ¶ 9(b); Doc. # 11 Brebnor Aff. Specifically, Brebnor utilized the family care provision, 29 U.S.C. § 2612(a)(1)(C). The last time Brebnor had utilized FMLA leave was March 2, 2004. (Doc. # 5 Ex. B ¶ 8(b)).

#### 3. Reichenbach

Reichenbach used FMLA leave under the self-care provision for her carpal tunnel syndrome/tendonitis. *Id.* at ¶ 8(c). The last time she used FMLA leave before the lay off was March 1, 2004. *Id*; *see also* Doc. # 11.

  **4.**  **Dill**

 Dill utilized FMLA leave under the self-care provision for her fibroid uterus dsymenorrhea, adenoysis, and uterine prolapse. (Doc. # 5 Ex. B ¶ 8(d)). The last time Dill used FMLA was July 16, 2002. *Id.*[1]

  **5.**  **Ginn**

 Ginn had a sleep disorder so she took FMLA leave under the self-care provision. (Doc. # 5 Ex. B ¶ 8(e)). Ginn last used FMLA leave on December 2, 2002. *Id.*[2]

  **6.**  **Western**

 Western utilized the FMLA's self-care provision to get leave for her arm/elbow condition; diabetes and depression; lumbogocal spine sprain; hypertension; obesity; arthritis; and hypertension. (Doc. # 5 Ex. B ¶ 8(f)). The last date Western used FMLA leave before the lay off was December 15, 2003. *Id.*; *see also* Doc. # 11 Western Aff.

  **7.**  **Green**

 Because she suffered from hypertension and lupus, Green used FMLA leave under the self-care provision. (Doc. # 5 Ex. B ¶ 8(g)). March 19, 2004 was the last date she took FMLA leave. *Id.*[3]

  **C.**  **DEPARTMENT OF LABOR INVESTIGATION**

 The CWA filed a complaint with the Department of Labor ("DOL") on July 21, 2004 alleging that the Office terminated the employees in the Business Service Division for exercising

---

[1] Dill did not execute an affidavit. (Doc. # 11). Vivian Hunt, Teresa Davidson, and Mary Mangon did execute affidavits but they are not parties to this action. *Id.*

[2] Ginn did not execute an affidavit. (Doc. # 11).

[3] Green did not execute an affidavit. (Doc. # 11).

their FMLA rights. (Doc. # 5 Ex. J). The DOL conducted an investigation and determined on September 20, 2004 that the complaint was unsubstantiated. *Id.*

### D. CURRENT ACTION

Plaintiffs filed their Complaint on August 6, 2004. (Doc. # 1). Plaintiffs allege that Defendants terminated them in retaliation for Plaintiffs' taking FMLA leave. *Id.* at ¶¶ 18-23; 26 U.S.C. § 2615(a)(2). Plaintiffs seek compensatory, punitive, and liquidated damages; reinstatement; back pay; reimbursement for lost pension and benefits; attorneys fee's and costs; and a declaratory judgment that Defendants' actions violated the FMLA. *Id.* at ¶¶ A-E. Defendants deny Plaintiffs' allegation and have moved for full summary judgment. (Doc. # 5). It is to an examination of that motion that this Court now turns.

### STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52). However, in ruling on a motion for summary judgment, "a district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

## DISCUSSION

Defendants assert that the Court lacks jurisdiction over Plaintiffs' claims against Blackwell in his individual capacity and that the Eleventh Amendment bars the claims of McDermott, Reichenbach, Dill, Ginn, Western, and Green against the Defendants in their official capacities. (Doc. # 5 -10). Furthermore, Defendants posit that Brebnor's claim must fail because she failed to establish her burden of proof. *Id.* at 11-12.

## I.     CLAIMS AGAINST BLACKWELL IN HIS INDIVIDUAL CAPACITY

Plaintiffs assert their FMLA claim against Blackwell in both his individual and official capacities. (Doc. # 1). However, the FMLA does not impose individual liability on public agency employers. *Mitchell v. Chapman*, 343 F.3d 811, 829 (6th Cir. 2003) (citing 29 U.S.C. § 2611(4)(A)(iii)). As such, the Court **GRANTS** Defendants' motion for summary judgment on Plaintiffs' FMLA claims against Blackwell in his individual capacity. (Doc. # 5).

6

## II. THE CLAIMS OF McDERMOTT, REICHENBACH, DILL, GINN, WESTERN, AND GREEN AGAINST THE OFFICE AND BLACKWELL IN HIS OFFICIAL CAPACITY

Defendants assert that the claims of McDermott, Reichenbach, Dill, Ginn, Western, and Green against the Office and Blackwell are barred by the Eleventh Amendment. (Doc. # 5 at 8-11). Those Plaintiffs assert that the Eleventh Amendment is inapplicable to their claims for declaratory relief. (Doc. # 9 at 2).

The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment provides a type of sovereign immunity, and deprives the federal courts of jurisdiction to entertain a suit brought by an individual against a non-consenting State. *Touvell v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 422 F.3d 392, 395 (6th Cir. 2005) (citing *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721, 726 (2003)); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). Congress may, however, abrogate such immunity if it (1) makes its intention to abrogate unmistakably clear in the language of the statute, and (2) acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment. *See Hibbs*, 538 U.S. at 726. Section 5 of the Fourteenth Amendment grants Congress the power "to enforce" the substantive guarantees of § 1 of the Amendment, among them equal protection of the laws, by enacting "appropriate legislation." "Congress may, in the exercise of its § 5 power, do more than simply proscribe conduct that [the Supreme Court has] held unconstitutional." *Hibbs*, 538 U.S. at 728; *see also Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("'Congress' power

"to enforce" the Amendment includes the authority both to remedy and to deter violation of rights guaranteed thereunder by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text.'") (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 81 (2000)). "In other words, Congress may enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct." *Hibbs*, 538 U.S. at 727-28.

With respect to the claims of Plaintiffs McDermott, Reichenbach, Dill, Ginn, Western, and Green against the Office and Blackwell in his official capacity, the Sixth Circuit has held that private litigation to enforce the FMLA against a state may not proceed in federal court. *Sims v. University of Cincinnati*, 219 F.3d 559 (6th Cir. 2000). Subsequent to the decision in *Sims*, the United States Supreme Court held that state employees may recover money damages in federal court in the event of a state's failure to comply with the FMLA's family-care provision. *Hibbs*, 538 U.S. 721 (2003). The Supreme Court did not address in *Hibbs* whether a state employee is barred from recovering money damages in federal court in the event of a state's failure to comply with the FMLA's self-care provision, which is the FMLA provision at issue in this case. *Higginbotham v. Ohio Dep't of Mental Health*, No. C-1-03-687, 2005 U.S. Dist. LEXIS 23029, 18-19 (S.D. Ohio 2005). Recently, however, the United States Court of Appeals for the Sixth Circuit addressed that precise question, and held "that the self-care provision of the FMLA is unconstitutional insofar as it purports to abrogate state sovereign immunity." *Touvell,* 422 F.3d at 400. The Court is therefore bound by *Touvell* and holds that Ohio's Eleventh Amendment immunity bars Plaintiffs McDermott, Reichenbach, Dill, Ginn, Western, and Green from proceeding against the Office and Blackwell on their claim under FMLA's self-care

provision. Because the Eleventh Amendment and *Touvell* prohibit McDermott, Reichenbach, Dill, Ginn, Western, and Green from proceeding with their FMLA self-care claim, the type of remedy they seek is immaterial to the Court's holding. *See Higginbotham v. Ohio Dep't of Mental Health, et al.*, No. C-1-03-687, 2005 U.S. Dist. LEXIS 23029, at *17-19 (S.D. Ohio 2005) (granting summary judgment on plaintiff's claims under the FMLA's self-care provision, including her request for declaratory relief, based upon *Touvell* and the Eleventh Amendment). Thus, the Court **GRANTS** Defendants' motion for summary judgment on the FMLA self-care retaliation claim of McDermott, Reichenbach, Dill, Ginn, Western, and Green.

### III. BREBNOR'S FMLA CLAIMS

Brebnor's FMLA claims originate from the family care provision. (Doc. # 11 Brebnor Aff. ¶ 7). In *Hibbs*, the United States Supreme Court held that the FMLA's family care provision abrogated state immunity under the Eleventh Amendment. *Hibbs*, 538 U.S. at 740. Accordingly, Defendants argue that summary judgment should be granted because Brebnor fails to satisfy her burden of proof. (Doc. # 5 at 11-12; Doc. # 13 at 7-12). In contrast, Brebnor asserts that she has established the existence of a genuine issue of material fact that prevents the Court from granting summary judgment. (Doc. # 9 at 5-7).

The FMLA prohibits employers from retaliating against employees for the exercise of rights provided by the Act. *See* 29 U.S.C. § 2615(a)(1). No direct evidence exists to support Brebnor's assertion of Defendants' retaliation. Consequently, she must first establish a *prima facie* case of retaliation utilizing indirect evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Skrjanc v. Great Lakes Power Services, Co.*, 272 F.3d 309, 315 (6th Cir. 2001)(adopting *McDonnell Douglas* framework for FMLA case relying on indirect

9

evidence).  If Brebnor establishes her *prima facie case*, the burden shifts to Defendants to present a legitimate, nondiscriminatory reason for Brebnor's termination.  *McDonnell Douglas*, 411 U.S. at 802-04.  Should Defendants do so, the burden then returns to Brebnor to establish that Defendants' articulated reason is in reality a pretext.  *Id.* at 804-806.

      A.     *PRIMA FACIE* **CASE**

To establish a *prima facie* case of retaliation, Brebnor must prove that: (1) she availed herself of a protected right under the FMLA by notifying Defendants of her intent to take leave, (2) she was adversely affected by an employment decision, and (3) there is a causal connection between the protected activity and the adverse employment action.  *Skrjanc*, 272 F.3d at 314 (citing *Canitia v. Yellow Freight Sys.*, 903 F.2d 1064, 1066 (6th Cir. 1990)); *see also McMillian v. Potter*, 130 Fed. Appx. 793, 796 (6th Cir. 2005).  It is important to note that a plaintiff's burden in establishing a *prima facie* case is not intended to be an onerous one.  *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 870 (6th Cir. 2001).

It is undisputed that Brebnor took FMLA leave.  (Doc. # 5 Ex. B ¶ 8(b); Doc. # 11 Brebnor Aff. ¶ 7).  In addition, it is clear that Brebnor was adversely affected by Defendants' decision to lay her off.  (Doc. # 5 Ex. B).  *Smith v. City of Salem*, 378 F.3d 566, 575-576 (6th Cir. 2004) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).  Thus, the third element is at issue here.

Brebnor was laid off approximately five (5) months after the last day she took FMLA leave.  (Doc. # 5 Ex. B ¶ 8(b); Doc. # 5 Ex. I # 2).  Proximity in time between a request for FMLA-protected leave and discharge may provide sufficient evidence of a causal connection for purposes of establishing a *prima facie* case of retaliation.  *Skrjanc*, 272 F.3d at 314; *DiCarlo v.*

*Potter*, 358 F.3d 408, 421 (6th Cir. 2004) ("this Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an [*34] inference of retaliation to arise."). Keeping in mind that Brebnor's burden in establishing a *prima facie* case is not onerous, the Court concludes that the five (5) month gap between Brebnor's FMLA leave and her lay off is sufficient evidence of a causal connection for the purpose of establishing a *prima facie* case of retaliation.  *See Summerville v. Esco Co.*, 52 F. Supp. 2d 804, 813 (W.D. Mich. 1999) (holding ten (10) month gap was sufficient to establish the causal connection element of the *prima facie* case).

### B. LEGITIMATE, NON-DISCRIMINATORY REASON

Because Brebnor has satisfied her *prima facie* burden, the burden shifts to Defendants to produce a legitimate, non-discriminatory reason for Brebnor's termination. *McDonnell Douglas*, 411 U.S. at 802-04.  Defendant is not required to meet this burden by a preponderance of the evidence, but rather "the employee's *prima facie* case of discrimination will be rebutted if the employer articulates lawful reasons for the action; that is, to satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  Defendants have satisfied their burden.

Defendants state that they decided to lay off the call center employees because the consultant's report revealed that outsourcing could save 40 % of its budget for the customer service area and maintain a satisfactory level of customer service by implementing that method.

(Doc. # 5 Ex. C at 1, 8; Doc. # 5 at 3).  The individuals were laid off in accordance with the Agreement's seniority provision.  Brebnor does not contest the consultant's findings nor does she contest that she was laid off pursuant to the Agreement's seniority provision.  Consequently, the Court holds that Defendants produced admissible evidence that would allow the trier of fact to rationally conclude that the employment decision had not been motivated by discriminatory animus.

**C.    Pretext**

Because the Defendants have articulated a legitimate reason for their action, the burden of production shifts back to Brebnor to demonstrate that the Defendants' reason is pretextual.  A plaintiff generally shows pretext by showing that the proffered reason:  (1) had no basis in fact; (2) was insufficient motivation for the employment action; or (3) did not actually motivate the adverse employment action.  *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-06 (6th Cir. 1998); *Manzer v. Diamond Shamrock Chem. Co*., 29 F.3d 1078, 1084 (6th Cir. 1994).

The first method is essentially an attack on the credibility of the employer's proffered reason.  *Joostberns v. United Parcel Servs., Inc*., 2006 U.S. App. LEXIS 533, at *17-20 (6th Cir. 2006) (citing *Manzer*, 29 F.3d at 1084)).  It consists of showing that the employer did not actually have cause to take adverse action against the employee based on its proffered reason, and thus, that the proffered reason is pretextual.  *Id.*  Where the employer can demonstrate an honest belief in its proffered reason, however, the inference of pretext is not warranted.  *See Smith*, 155 F.3d at 806.  Thus, the Sixth Circuit has adopted the "honest belief rule."  *See Majewski v. Automatic Data Processing, Inc*., 274 F.3d 1106, 1117 (6th Cir. 2001); *Smith*, 155 F.3d at 806-07.  Under the honest belief rule, an employer's proffered reason is considered

honestly held where the employer can establish it 'reasonably relied on particularized facts that were before it at the time the decision was made." *Id.*; *see also Majewski*, 274 F.3d at 1117. Thereafter, the burden is on the plaintiff to demonstrate that the employer's belief was not honestly held. *Smith*, 155 F.3d at 807. An employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact. *Majewski*, 274 F.3d at 1117.

Similarly, the second method is an attack on the credibility of the employer's proffered reason. *Joostberns*, 2006 U.S. App. LEXIS 533, at *17-20 (citing *Manzer*, 29 F.3d at 1084). Unlike the first method, the second method admits that the employer's proffered reason has a basis in fact but denies that it created sufficient cause for the adverse employment action. *Id.* It "ordinarily consists of evidence that other employees . . . were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Id.*

In contrast, the third method–demonstrating that the proffered reason did not actually motivate the employer–does not attack the credibility of employer's proffered reason. *Id.* Rather, it admits that the reason could motivate the employer but argues that the illegal reason is more likely than the proffered reason to have motivated the employer. *Id.* This method, however, is not identical to a *prima facie* case. *Id.* Rather, it requires the plaintiff to submit additional evidence. *Id.* A plaintiff must offer evidence sufficient to allow a reasonable juror to find that the employer was motivated by illegal reasons considering both the employer's stated reasons and evidence the employer offers in support of such reasons. *Id.* at 1083; *see also Anderson*, 477 U.S. 257-58 (stating that to survive summary judgment, a party must offer

sufficient evidence to allow a reasonable jury to find in his or her favor).

Brebnor attempts to utilize the third method to satisfy her burden.  Specifically, she points to a newspaper article that appeared in the Columbus Dispatch on July 8, 2004 as evidence of a causal connection between her taking FMLA leave and her being laid off.  (Doc. # 9 at 5-6; Doc. # 11).  In the article, Carlo LoParo ("LoParo"), Blackwell's spokesman, stated that the call center experienced absentee rates of 35 to 50 percent on any given day.  *Id.*  In addition, Brebnor notes that she saw Heidi Riggs ("Riggs"), the Office's Director of Human Resources, on television around the time Brebnor received notice of the lay off.  (Doc. # 11 Brebnor Aff. ¶ 4; Doc. # 5 Ex. B).  Brebnor avers that during the television report, she heard Riggs state that the lay offs "were necessary due to the attendance problems in the Call Center."  (Doc. # 11 Brebnor Aff. ¶ 5).[4]  According to Brebnor, these statements "make clear that the layoff of the Secretary of State was nothing more than a ruse to punish employees who used leave for serious medical conditions of their . . . family members."  (Doc. # 9 at 6).

The generic statements of LoParo and Riggs fail to satisfy Brebnor's burden.  The term "absence" encapsulates a variety of meanings such as tardiness and non-attendance due to temporary illness.  Brebnor does not dispute that the call center experienced attendance problems with its employees.  (Doc. # 9).  In addition, Defendants granted each of Brebnor's FMLA requests, and she only used three days of FMLA leave.  Furthermore, Brebnor was one of a number of individuals Defendants laid off as a result of a business decision based upon the results of the consultant's report.  Moreover, Brebnor was laid off in accordance with the

---

[4] Riggs maintains that she "is unaware of any statement that the layoffs were due to 'absenteeism' as alleged by Plaintiffs."  (Doc. # 5 Ex. B ¶ 12).  For purposes of deciding the instant motion, the Court will assume that Riggs did make the statement at issue.

Agreement's seniority provision.

Given these facts, the Court concludes that Brebnor fails to offer evidence sufficient to allow a reasonable juror to find that the Defendants were motivated by illegal reasons considering both the Defendants' stated reasons and evidence they offers in support of their reasons. Defendants' motion for summary judgment on Brebnor's FMLA retaliation claims is **GRANTED**. (Doc. # 5).

### IV.  DEFENDANTS' MOTION FOR ATTORNEY'S FEES

Defendants move the Court to award their attorney's fees but fail to cite any authority entitling them to such an award. (Doc. # 5 at iii). Interestingly, 29 U.S.C. § 2617(a)(3),[5] the FMLA's attorney's fees statute, only mandates awarding attorney's fees to a prevailing plaintiff. As such, the court **DENIES** Defendants' motion for attorney's fees.

### CONCLUSION

Defendants' motion for summary judgment is **GRANTED**. (Doc. # 5). Defendants' motion for attorney's fees is **DENIED**. *Id.* The Clerk shall enter judgment accordingly and shall terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division at Columbus.

**IT IS SO ORDERED**.

---

[5] That provision provides:
(a) Civil action by employees.
(3) Fees and costs. The court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant.
29 U.S.C.S. § 2617.

15

    /s/   Gregory L. Frost

**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**